Edward W. Lukas, Jr.
Harrington, Foxx, Dubrow & Canter, LLP
333 South Hope Street, Suite 1000
Los Angeles, CA 90071
(213) 489-3222 x227 (phone)
(424) 354-1853 (Direct Line)
(213) 622-4321 (fax)
Email: elukas@hfdclaw.com

Glenn E. Forbis (*Pro Hac Vice*)
J. Bradley Luchsinger (*Pro Hac Vice*)
Colette E. Verch (*Pro Hac Vice*)
Harness, Dickey & Pierce PLC
5445 Corporate Drive, Suite 200
Troy, MI  48098
248-641-1600
gforbis@harnessip.com
bluchsinger@harnessip.com
cverch@harnessip.com

Attorneys for Plaintiff DASSAULT SYSTÈMES
SOLIDWORKS CORPORATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KEVIN MILLS, an individual, | Case No: 2:24-cv-04939-ODW-AGR |
| | The Hon. Otis D. Wright, II |
| Plaintiff/Counterclaim Defendant, | The Hon. Magistrate Alicia G. Rosenberg |
| v. | |
| | **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COUNTS I AND II AND GRANT OF DEFENDANT'S COUNTERCLAIM IV** |
| STITCH INDUSTRIES, INC., d/b/a JOYBIRD, a Delaware Corporation | |
| Defendant/Counter-Claimant. | |
| | Motion Hearing: August 18, 2025 |
| | Pretrial Conference: October 6, 2025 |
| | Trial: October 28, 2025 |

---

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY JUDGMENT STANDARD ........................................................... 3

III.  ARGUMENT ..................................................................................................... 3

     A.   Summary Judgment in Joybird's Favor Dismissing Mills'
          Copyright Infringement Counts I and II Directed To Joybird's Use
          and Distribution of the Photographs Is Appropriate Because Joybird
          Had (and Has) an Unlimited and Irrevocable License to Use and
          Distribute the Photographs ..................................................................... 3

          1.    Summary of the Argument ......................................................... 3

          2.    The Relevant Law ...................................................................... 4

          3.    Joybird Had (and Has) An Unlimited Nonexclusive Implied
               License to Use and Distribute the Photographs ......................... 5

          4.    No Reasonable Jury Could Conclude Mills and Joybird
               Entered Into an Oral Agreement That Included A
               *Conditional* License for Joybird ............................................. 6

          5.    The Implied License is Irrevocable In View of Joybird's
               Payment of Consideration ....................................................... 11

     B.   Summary Judgment in Defendant's Favor Granting Defendant's
          Breach of Implied License Counterclaim IV Is Appropriate
          Because The Implied License Included An Implied Promise Not To
          Sue For Copyright Infringement, Plaintiff Brought The Present
          Action for Copyright Infringement, and Defendant Suffered
          Damages As a Result of Plaintiff's Breach ...................................... 12

          1.    Plaintiff Breached the Implied License ................................. 12

          2.    Defendant Suffered Damages As a Direct Result of
                Plaintiff's Breach .................................................................. 13

i

C.    Summary Judgement in Defendant's Favor Dismissing Plaintiff's Copyright Infringement Counts I and II against Defendant's Use and Distribution of the Photographs Is Appropriate Because the Defendant Is a Co-Owner of the Photographs. ............................... 14

      1.    Employees of Joybird Made Copyrightable Contributions to the Photographs .................................................................... 15

      2.    Joybird Employees Were Joint Authors of the Photographs ............. 21

D.    Summary Judgment Precluding Mills' Claim for Statutory Damages and Attorneys' Fees is Appropriate ................................ 23

IV.    CONCLUSION ....................................................................... 24

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................3

*Asset Mktg. Sys., Inc. v. Gagnon*,
    542 F.3d 748 (9th Cir. 2008) ...............................................4, 5, 8, 11

*Brod v. Gen. Publ'g Group, Inc.*,
    32 Fed. Appx. 231 (9th Cir. 2001) ....................................14, 21, 22, 23

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...............................................................3

*In Re CFLC, Inc.*,
    89 F.3d 673 (9th Cir. 1996) ......................................................12

*Corbello v. DeVito*,
    777 F. 3d 1058 (9th Cir. 2015)....................................................5

*CraftShack, Inc. v. Critical Tel. Applications, Inc.*,
    2025 U.S. Dist. LEXIS 85534 (C.D. Cal. Mar. 14, 2025)..............................16

*Dennis Fugnetti Photography Trust v. Bird B Gone, Inc.*,
    2022 U.S. Dist. LEXIS 92724 (C.D. Cal. April 4, 2022)...........................3, 14

*Derek Andrew, Inc. v. Proof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008)......................................................23

*Effects Assocs., Inc. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990)...................................................4, 11

*Ets-Hopkin v. Skyy Spirits, Inc.*,
    323 F.3d 763 (9th Cir. 2003)......................................................16

*Foad Consulting Group, Inc. v. Musil Govan Assalino*,
    270 F. 3d 821 (9th Cir. 2001)..................................................4, 11

*Providence Publ'ns LLC v. NBC Universal Media, LLC*,
    2025 U.S. LEXIS 79572 (C.D. Cal. Mar. 25, 2025) ..................................4

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Westhoff Vertribsges MBH v. Berg,*
  2023 U.S. Dist. LEXIS 157988 (S.D. Cal. Sep. 6, 2023)................................4, 11

*Worldwide Church of God v. Philadelphia Church of God,*
  227 F.3d 1110 (9th Cir. 2000) ...............................................................4

**Statutes**

17 U.S.C. §§ 101, 201(a) ...............................................................14

17 U.S.C. § 201(b) ...............................................................15

17 U.S.C. § 504 (a) and (c) ...............................................................23

17 USC §412 ...............................................................2, 23

Relevant Law ...............................................................4

**Other Authorities**

Fed. R. Civ. P. 56 ...............................................................1, 24

Fed. R. Civ. P. 56(c) ...............................................................3

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## STATEMENT OF QUESTIONS PRESENTED

**Question #1**

1. Should the Court grant summary judgment in Defendant's favor, dismissing Plaintiff's copyright infringement claims against Defendant directed to Defendant's use of Plaintiff's registered photographs ("the Photographs") (Counts I and II), because Defendant has an unlimited and irrevocable implied license to use and distribute the Photographs, where:

   a. Defendant has an unlimited implied license to use and distribute the Photographs because (i) Defendant requested the creation of the Photographs; (ii) Plaintiff captured the Photographs and delivered the Photographs to Defendant; and (iii) at the time of delivery, Plaintiff objectively manifested his intent that Defendant use and distribute the Photographs without limitation; and

   b. Defendant paid consideration of ███████ to Plaintiff in the form of daily rates in exchange for its unlimited implied license, making the implied license irrevocable?

**Defendant's Answer: YES**

**Question #2**

2. Should the Court grant summary judgment in Defendant's favor, granting Defendant's breach of implied license claim against Plaintiff (Counterclaim IV), where:

   a. An implied copyright license includes, as a matter of law, a covenant not to sue for copyright infringement;

   b. Plaintiff filed this present action suing Joybird for copyright infringement; and

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

    c.  Joybird suffered damages as a result of Plaintiff's filing of the present action, including the consequential damages of incurring costs to remove and replace the Photographs it was accused of infringing?

**Defendant's Answer: YES**

**Question #3**

3.  Should the Court grant summary judgment in Defendant's favor, dismissing Plaintiffs' copyright infringement claims against Defendant directed to Defendant's use of Plaintiff's registered photographs ("the Photographs") (Counts I and II) because Joybird employees are at least co-authors of the Photographs and therefore Joybird is a co-owner of the copyrights in the Photographs, where:

    a.  Joybird employees made independently copyrightable contributions to the Photographs; and

    b.  Joybird employees qualify as an author of the joint work because (i) the Joybird employees maintained control over the Photographs; (ii) Mills made objective manifestations of his intent to be co-author; and (iii) the audience appeal of the work turns on the contributions of both parties?

**Defendant's Answer: YES**

**Question #4**

4.  Should the Court grant summary judgment in Defendant's favor, precluding Plaintiff's claim for statutory damages and attorneys' fees, where Joybird published the Photographs over three months before Plaintiff's copyright registration date?

**Defendant's Answer: YES**

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendant Stitch Industries, Inc., d/b/a Joybird ("Joybird" or "Defendant") respectfully submits this brief in support of its Motion under Fed. R. Civ. P. 56 for summary judgment dismissal of Counts I and II of the Complaint (ECF No. 1) filed by Plaintiff Kevin Mills ("Mills" or "Plaintiff") in this action.

The present action involves claims for copyright infringement. Joybird manufactures and sells furniture products. To assist in the sale of its furniture, Joybird uses images of its products on its website, social media, and advertising materials. Plaintiff is a freelance photographer whom Joybird hired as a third-party contractor on a project-by-project basis between 2019 and 2022 to collaborate with Joybird's creative team (including Joybird's own in-house photographers) to capture photographs of Joybird furniture collections. Over the course of many discrete engagements during this four-year period, Joybird paid Mills ▉▉▉▉ for his participation in the photoshoots. Because everyone knew that the sole purpose of creating the photographs was for Joybird to use them on its website and promotional materials, Mills and Joybird did not discuss the issues of authorship, copyrights, licenses or permissions to use the photographs, whether orally or in writing, at any time.

But in June 2023 – six months after Joybird stopped hiring Mills for photoshoots in late 2022 – Mills abruptly and opportunistically claimed for the first time that Joybird no longer had his permission to use the photographs. Joybird was shocked by this turn of events because it had been using the photographs for the past four years without objection from Mills, and it believed that whatever "permission" was required from Mills was implicit in exchange for Joybird's payments to Mills. Nonetheless, Mills demanded millions of dollars for Joybird's continued use of the photographs after July 9, 2023, the date Mills claims he "revoked" his permission (license) for Joybird to use the photographs, even though Joybird's use was the very reason for hiring Mills and capturing the photographs in the first place.

Attempting to avoid this unnecessary legal entanglement, Joybird phased out the

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

roughly 500 photographs at issue and created replacement images, independent from Mills' work, to use on its website and promotional materials. But Mills still brought this lawsuit seeking millions of dollars in statutory or actual damages, as well as disgorgement of Joybird's profits from the sales of its furniture realized after July 9, 2023.

Counts I and II of the Complaint (ECF. No. 1) allege direct (Count I) and contributory (Count II) copyright infringement of Plaintiff's registered photographs (the "Photographs") by Joybird. Summary judgment on these claims in Joybird's favor is appropriate because there is no genuine issue of material fact that Joybird had (and has) an unlimited and irrevocable implied license to use and distribute the Photographs. Further, summary judgment in Joybird's favor is appropriate on Joybird's Counterclaim IV for Mills' breach of the implied license (ECF No. 23) because an implied license includes, as a matter of law, a covenant not to sue for copyright infringement, which Mills breached by filing the present action.

Summary judgment in favor of Joybird on Plaintiff's copyright infringement claims (Counts I and II) is also appropriate because Joybird employees are at least co-authors, and therefore Joybird is a co-owner, of the Photographs. As a co-owner, Joybird cannot be liable for copyright infringement.

Finally, Mills requests an award of actual damages, or if elected, statutory damages, as relief to its copyright infringement claims (Counts I and II). Mills also seeks an award of its attorneys' fees. 17 USC §412 precludes an award of statutory damages and attorneys' fees where the alleged infringement commenced more than three months before the date of the copyright registration. Here, it is undisputed that Joybird's uses of the Photographs commenced before Mills registered the copyrights in January 2024. Therefore, summary judgment in favor of Joybird dismissing Mills' claim for statutory damages and attorneys' fees is appropriate, limiting Plaintiff's damage claim – to the extent Mills' copyright infringement claims survive this motion on the merits – to actual damages and disgorgement of profits attributable to the infringement.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. However, the "burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id.*, at 325. A material issue of fact for the jury exists unless, when the evidence is viewed in a light most favorable to the non-moving party, there is either a complete absence of proof or there are no controverted issues of fact upon which reasonable persons could differ. *Dennis Fugnetti Photography Trust v. Bird B Gone, Inc.*, 2022 U.S. Dist. LEXIS 92724, *8 (C.D. Cal. April 4, 2022).

## III.    ARGUMENT

### A.    Summary Judgment in Joybird's Favor Dismissing Mills' Copyright Infringement Counts I and II Directed To Joybird's Use and Distribution of the Photographs Is Appropriate Because Joybird Had (and Has) an Unlimited and Irrevocable License to Use and Distribute the Photographs

#### 1.    Summary of the Argument

Counts I and II of the Complaint (ECF No. 1) allege that Joybird infringed Mills' copyrights by using and distributing the Photographs after Mills purportedly revoked his permission (i.e., license) for Joybird to use the Photographs. It is undisputed that the parties did not have a written agreement concerning ownership of the copyrights and/or permission to use the Photographs. Statement of Uncontroverted Facts ("SUF") 10. Mills concedes that Joybird had his permission – under whatever rights Mills owned in the Photographs – to use and distribute the Photographs through July 9, 2023, at which time Mills contends he

3

revoked such permission. SUF 13. Therefore, a primary question before the Court is whether a genuine issue of material fact exists that Joybird continued to have an implied license *after* July 9, 2023 to use the Photographs while Joybird phased them out of use. The undisputed facts show that Mills granted Joybird an <u>unlimited implied license</u> to use the Photographs each time the Photographs were delivered to Joybird, and such implied license was <u>irrevocable as a matter of law</u> because Joybird paid compensation to Mills for the Photographs. Therefore, summary judgment in favor of Joybird dismissing Mills' copyright infringement claims is appropriate.

### 2.    The Relevant Law

A license to use a copyrighted work is an affirmative defense to a claim of copyright infringement. *Worldwide Church of God v. Philadelphia Church of God*, 227 F.3d 1110, 1114 (9th Cir. 2000). A nonexclusive license can be granted orally or by implication. *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008); *Nimmer on Copyright* § 10.03[A]. An implied license exists where, based on the licensor's conduct, the licensee "properly infers that the owner consents to [the] use." *Providence Publ'ns LLC v. NBC Universal Media, LLC*, 2025 U.S. LEXIS 79572, *11 (C.D. Cal. Mar. 25, 2025). "Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Id*. at *11-12.

An <u>implied nonexclusive license</u> is granted when (1) the licensee (Joybird) requests the creation of a work; (2) the licensor (Mills) makes the work and delivers it to the licensee who requested it; and (3) the licensor (Mills) intends that the licensee-requestor (Joybird) use and distribute the work <u>at the time of creation and delivery as manifested by the parties' conduct</u>. *Asset Mktg.*, 542 F.3d at 754-756 (emphasis added) (citing *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 559 n. 6 (9th Cir. 1990) ("every objective fact concerning the transaction supported the finding that an implied license existed")).

Once an implied license is granted, it becomes <u>irrevocable</u> if the license is supported by consideration. *Id*.; *Foad Consulting Group, Inc. v. Musil Govan Assalino*, 270 F. 3d 821, 825 (9th Cir. 2001); *Effects*, 908 F. 2d at 559; *see also*, *Westhoff Vertribsges MBH v. Berg*,

4

2023 U.S. Dist. LEXIS 157988, *34-35 (S.D. Cal. Sep. 6, 2023) (finding an irrevocable implied license to use photographs in advertising materials where licensor paid licensee for marketing services and licensor created the photographs as part of its marketing services).

### 3. Joybird Had (and Has) An Unlimited Nonexclusive Implied License to Use and Distribute the Photographs

Mills' engagements with Joybird between January 15, 2019 and November 18, 2022 consisted of many discrete photography projects. SUF 4. For each project, it is undisputed that: (1) Joybird requested that Mills capture photographs of its furniture collections, and (2) Mills delivered these photographs to Joybird.[1] Further, Joybird believes Mills agrees that he intended Joybird use and distribute the Photographs on its website, social media and product advertising materials. SUF 12, 40. Indeed, such use was the very foundation of the parties' working relationship. But to the extent Mills does deny that he had that subjective intent, the undisputed underlying objective evidence demonstrates that no reasonable jury could find Mills did not intend Joybird to use the Photographs in the manner it did.

When analyzing the "intent" prong of the implied license factors, the Ninth Circuit instructs courts to focus primarily on the licensor's "objective intent at the time of the creation and delivery of the work." *Corbello v. DeVito*, 777 F. 3d 1058, 1067 (9th Cir. 2015) (emphasis added). The factors for objective intent include: (1) the length of the parties' relationship; (2) the existence of written restrictions on the use of the works; and (3) the putative licensor's conduct at the time of delivery (the "*Gagnon*" factors). *Asset Mktg.*, 542 F. 3d at 755 (emphasis added).

With respect to the first factor, "a short term and discrete transaction indicates that the parties only intended the creator's work to be a discrete contribution and that others could use the work in future projects." *Id*. It is undisputed that during the parties' four-year relationship, Joybird hired Mills on a discrete project basis to capture and deliver

---

[1] Original photographs were captured on Joybird equipment and therefore instantaneously delivered to Joybird while Mills maintained only copies. SUF 17. When Mills was hired to edit photographs, the edited photographs were delivered via email. SUF 18.

5

photographs of specifically-requested furniture products. SUF 14. Mills invoiced Joybird for his work at the completion of each project. SUF 21. Therefore, this factor weighs in favor of an unlimited implied license.

With respect to the second factor ("written restrictions"), it is undisputed that there is no written communications suggesting limitations on Joybird's use of the Photographs for any reason. SUF 33. Indeed, Joybird employees attest that Mills never suggested – in writing or orally – that Joybird's use of the Photographs was limited in any way. SUF 11.

As for the third factor ("conduct at delivery"), Mills' actions <u>at the time the Photographs were delivered to Joybird</u> objectively demonstrate that he intended Joybird use the Photographs without limitation. Indeed, this was precisely what Joybird did – without a single objection from Mills – for the entirety of their four-year working relationship. SUF 4. Mills points to no objective evidence to suggest he did not intend Joybird to have an unlimited right to use the Photographs for which he was paid. No written communication from Mr. Mills suggests any limitation on Joybird's use until Mills raised the issue in <u>June, 2023, six months after Joybird stopped hiring Mills</u>. SUF 43.

### 4. No Reasonable Jury Could Conclude Mills and Joybird Entered Into an Oral Agreement That Included A *Conditional* License for Joybird

Mills appears to contend that Joybird did not have an *unlimited implied* license to use the Photographs because he and Joybird entered into a superseding *explicit oral agreement* at the time of the parties' initial discussions directed to potentially hiring Mills for photoshoots that included a *conditional license* for Joybird to use the Photographs <u>so long as</u> Joybird continued to hire Mills for photoshoots at a regular frequency of about one week per month, apparently indefinitely. Mills contends this purported agreement was made with Joybird employee Michelle Metzger ("Metzger") on Joybird's behalf. Mills' theory not only defies logic and industry standards, but is simply not true. Indeed, Mills offers no objective evidence that would support such a finding.

Mills apparently relies on the following text exchange between him and Metzger as

6

purported evidence of his conditional license grant, but the text exchange is entirely devoid of discussion about a license or permission to use the photographs:



SUF 34. Nothing about this exchange suggests a limitation on Joybird's permission to use the Photographs for any purpose, let alone a limitation conditioned on hiring frequency. At best, this shows Mills sought an estimate of how frequently Joybird may want his services for his own planning purposes, but has nothing to do with limitations on Joybird's use of the Photographs. Mills later admits that this exchange did not constitute an agreement, acknowledging that his rate was <u>not</u> subject to monthly minimums:

SUF 35.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Metzger confirms that she and Mills never discussed limitations to Joybird's rights to use the Photographs. Despite being an uninterested third-party to this action and having a long-standing relationship with Mills, Metzer attests that she did not discuss, let alone enter into an agreement, with Mills regarding copyright ownership or Joybird's permission to use the Photographs, much less an agreement contingent on hiring Mills with any regular schedule.[2] SUF 24-25. Metzger's testimony is corroborated by the fact that, over 18 months later, Mills himself evidently did not believe such agreement existed (*see*, the September 2020 text message above). SUF 35.

Mills' June 1, 2023 email to Joybird *confirms* that he had not limited or conditioned Joybird's use of the Photographs for any reason during the course of the parties' relationship. In that email, Mills states, for the first time, that he wants to <u>initiate</u> a discussion about "licensing" Joybird's use of the Photographs:

> "I'm writing to <u>initiate</u> a conversation regarding image licensing for Joybird's current (and presumably continued) use of my work on its website and in marketing materials…
>
> As I have explained to Erik and Harrison in our recent discussions, <u>I have been comfortable waiving any licensing fees for this body of work up until now because Joybird has been consistent in providing me with regular predictable engagement</u> …
>
> <u>I must revisit my licensing terms with Joybird if the company plans to continue using my images or their derivatives moving forward.</u>"

SUF 43. This email – which is the first documentary evidence of Mills' intent to impose limitations on Joybird's use of the Photographs – undeniably occurred months (and in some instances, years) after the Photographs were created and used. If the terms were changing for the first time in 2023, there could not have already been a limitation to Joybird's use. Thus, Mills' intent to "revisit" his purported "licensing terms" on June 18, 2023 is not evidence of his intent <u>at the time of creation and delivery</u> of the Photographs. *Asset Mktg.*,

---

[2] Aside from the fact that Metzger did not enter into any agreement with Mills on Joybird's behalf, Metzger did not even have authority – actual or apparent – to bind Joybird to any agreement. SUF 26–27.

8

542 F.3d at *757 (finding that discussion of licensing occurring for the first time at the end of a relationship does not supersede the parties' objective manifestation of intent when the license was granted).

Moreover, in all communications referencing his rate, Mills time and time again did not limit or even mention Joybird's permission or license to use the Photographs, as would be expected had such an agreement existed. Multiple examples demonstrate this:

   i.   *The 2019 Email with Metzger Demonstrates that Mills Did Not Grant an Oral Limited License*

In one example, on July 12, 2019, Metzger asked Mills if he was available for a series of future T1 assignments. Mills responds, "As for the three days a week moving forward, [I']m going to have to put some thought into that. I[']m totally up for locking down a more regular work schedule with joybird, but for ███████, I need to continue having total scheduling flexibility like I do now so I don't think that rate for a guaranteed 3 days a week would work out for me," and inquires, "[i]f we were to up my rate to say, ███████ and agreed to three days a week for 3 weeks a month…" SUF 36.

Here, Mills did not reiterate or suggest that Joybird's license to use the Photographs was in any way limited to a frequency of hire. Moreover, Metzger <u>did not respond</u> to Mills' requests. SUF 36. Clearly, no agreement was reached between Metzger and Mills suggesting that even his rate – let alone Joybird's permission to use the Photographs – was dependent on frequency of hire.

   ii.  *The 2019 Email with Werner Demonstrates that Mills Did Not Grant an Oral Limited License*

Erik Werner ("Werner") is a Joybird employee responsible for the logistics of Joybird photoshoots including hiring photographers and support staff. SUF 28. On September 26, 2019, Mills requested Werner to increase his rates.[3] SUF 37. Mills states, "Michelle reached out about my availability for T2's 10/14-24 and [I've] been balking on accepting because

---

[3] Mills did not state that these rates were contingent on a frequency of hire.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

of the large block of time at a ███ rate…If I were to miss out on [other client's] work, which pays between $800 and $1500 per day, because of being tied up at Joybird at ███, I wouldn't come anywhere near meeting my financial needs for the month, particularly in these months leading up to thanksgiving and Christmas/new years recess." SUF 37. On September 30, 2019, Werner responds maintaining Joybird's set rate of ███ for T1 photography projects and agreeing to an increased rate for T2–T4 photography. SUF 37. Mills explicitly agrees to the ███ rate for T1 photographs without a frequency contingency stating, "**Im happy to continue billing T1's at ███ if/when you need me as it is a welcome filler for me in between jobs at my normal rate.**" SUF 37.

Again, Mills did not reiterate or suggest that his agreement with Joybird limited Joybird's right to use the Photographs. Mills accepted the proposed rates without mentioning restrictions to Joybird's use and actually did not make the ███ T1 rate conditional in any way.

The few inter-party communications discussing Mills' rate for Joybird projects show that Joybird never agreed to any proposed frequency of hire condition. Yet, Mills continued accepting and requesting additional work at Joybird's set rates. SUF 39. Significantly, <u>none</u> of the communications produced in this case discuss <u>any limit</u> to Joybird's permitted use of the Photographs for any reason, including any conditional permission to use the Photographs based on Mills' daily rate and frequency of hire. SUF 38, 40.

Throughout the four-year relationship between the parties, Mills knew Joybird had its set rates for photography projects based on the Tier of the project, knew Joybird used and distributed the Photographs on its website and promotional materials, and continued to accept or decline projects on a project basis without ever expressing objections, limits or contingencies to Joybird's use and distribution of the Photographs. SUF 39. Through November 2022, while the photographs were in use, Mills continued to accept and inquire about Joybird photography projects at Joybird's set rates without ever stating that: (i) he owned the copyrights in the photographs; (ii) Joybird's use and distribution of the photographs were contingent upon further hiring; and/or (iii) his rate for capturing

10

photographs was contingent upon further hiring. SUF 39. Through June 2023, while the photographs were in use, Mills continued to inquire about opportunities to be hired for Joybird's photography projects without objecting to Joybird's use. SUF 40. Based on Mills' conduct and manifested intent, no reasonable trier of fact could conclude that Joybird's permission to use the Photographs was limited or conditional.

### 5. The Implied License is Irrevocable In View of Joybird's Payment of Consideration

It is undisputed that Joybird paid Mills a daily rate of ███████ for T1 projects and ███████ for T2–T4 projects. SUF 20. As discussed above, the daily rate accounted for Mills' photography services for each project and the use and distribution of the delivered Photographs on Joybird's websites and promotional materials. In sum, Joybird paid Mills ███████ for the capture, delivery, and unlimited use of the photographs. SUF 22.

Mills cannot now revoke the implied license he knowingly and objectively granted in an apparent ploy to manufacture and cash in on a copyright infringement claim. Plaintiff's attempt to rescind Joybird's license – made only after it became clear that Joybird was not hiring him for projects – is clearly opportunistic and is the exact type of behavior this circuit routinely rejects. *See, e.g.*, *Westhoff Vertribsges MBH,* 2023 U.S. Dist. LEXIS 157988 at *38 ("The tactic Defendant[] seek[s] to employ has been tried and rejected before. Several times, the Ninth Circuit has quashed *post hoc* attempts by creators who claim the compensation they received covered their labor but not the actual works produced."); *Asset Mktg.*, 542 F.3d at 756–57 ("[I]t defies logic that [licensee] would have paid [licensor] for his [] services if [licensee] could not have used the [works] without further payment pursuant to a separate licensing agreement that was never mentioned…and never otherwise requested at that time."); *Effects*, 908, F.2d at 558–559 ("To hold that [licensee] did not at the same time [as creating the work at defendant's request and handing it over to defendant] convey a license to use the footage…would mean that plaintiff's contribution to the film was of minimal value, a conclusion that can't be squared with the fact that [licensor] paid

11

[licensee] almost $56,000 for this footage."); *Foad*, 270 F.3d at 829 ("If accepted, [licensee]'s claim that though it was hired to create documents for the project, [licensor] had no right to use the documents…would allow architectural or engineering firms to hold entire projects hostage, forcing the owner either to pay the firm off, continue to employ it, or forego the value of all work completed so far and start from scratch…one would expect that a firm that intended to exercise such ongoing control over a project would clearly specify this in a contract.").

Like all cases before it, no reasonable trier of fact could find that Mills did not grant Joybird an unlimited and nonexclusive license to use and distribute the Photographs. Because Joybird paid Mills to capture the photographs and the central part of the relationship between the parties was Joybird's use and distribution of these photographs, the license is irrevocable. Therefore, Plaintiff's claim for copyright infringement fails as a matter of law and summary judgment should be granted to dismiss Counts I and II.

**B.** **Summary Judgment in Defendant's Favor Granting Defendant's Breach of Implied License Counterclaim IV Is Appropriate Because The Implied License Included An Implied Promise Not To Sue For Copyright Infringement, Plaintiff Brought The Present Action for Copyright Infringement, and Defendant Suffered Damages As a Result of Plaintiff's Breach**

Counterclaim IV of Defendant's Answer and Counterclaims (ECF No. 23) alleges that Plaintiff breached the implied copyright license. Summary judgment in favor of Joybird on Joybird's breach of implied license counterclaim is appropriate because based on undisputed facts, Plaintiff breached the implied copyright license by filing the present action and Joybird suffered damages as result.

**1.** **Plaintiff Breached the Implied License**

As was discussed in detail in Section III(A) above, Joybird continues to have an unlimited and nonexclusive license to use and distribute the Photographs. This Court has held that "a nonexclusive license that's unlimited in scope necessarily implies a promise not to sue for copyright infringement." *Id*. (citing *Fugnetti v. Bird B Gone, Inc.*, 2019 U.S. Dist.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

1  LEXIS 208351, 2019 WL 6362467, at *3 (C.D. Cal. Sept. 16, 2019)); *See also*, *In Re CFLC,*
2  *Inc.*, 89 F.3d 673, 677 (9th Cir. 1996)).

3       Joybird's implied license is a copyright license and therefore includes the implied
4  promise from Mills not to sue for copyright infringement as a matter of law. Despite the
5  license and Mills' implied promise not to sue for copyright infringement, Mills threatened
6  to sue for copyright infringement and ultimately filed the present action. SUF 5.
7  Therefore, there is no genuine issue of material fact that Plaintiff breached the implied
8  license.

9       **2.    Defendant Suffered Damages As a Direct Result of Plaintiff's**
10             **Breach**

11       When an implied copyright license is breached, the non-breaching party "is legally
12  able to recover all appropriate damages for breach of a nonexclusive license available under
13  California law, including consequential damages." *Id.*at *23. Consequential damages
14  include damages that are (1) foreseeable, (2) proximately caused by Plaintiff's breach, and
15  (3) reasonable. *Id.* at *23–24 (citing *Global Hawk Insurance Co. (RRG)* v. *Wesco Ins. Co.*,
16  424 F. Supp. 3d 848, 854-55 (C.D. Cal. 2019) (quoting *Lewis Jorge Constr. Mgmt., Inc. v.*
17  *Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969, 22 Cal. Rptr. 3d 340, 102 P.3d 257 (2004))
18  (Consequential damages "must be 'foreseeable and proximately caused by the breach of a
19  contract'—they are recoverable only to the extent they 'were either actually foreseen . . . or
20  were 'reasonably foreseeable' when the contract was formed.'").

21       In paying ▮▮▮▮▮▮ to Mills in exchange for the capture, delivery, and unlimited,
22  nonexclusive use of the Photographs, Joybird relied on its implied license and incorporated
23  the Photographs on its website and promotional materials. SUF 42. Based on the objective
24  conduct of Mills and its investment in creating the Photographs, Joybird expected to be able
25  to use the Photographs through at least the entirety of each product's lifetime. SUF 42.

26       When Mills first put Joybird on notice for a potential claim for copyright
27  infringement in June 2023, Joybird engaged in significant efforts to remove (i.e., "phase
28  out") the accused Photographs. SUF 45. The efforts included (i) hiring third party

13

photographers to re-shoot the subject furniture or (ii) replacing the Photographs with photographs captured by third party photographers captured before Mill's engagement with Joybird. SUF 45. There is no issue of fact that the cost to replace the Photographs totals at least ███. [4] SUF 46.

Joybird would not have removed or replaced the Photographs from its websites, social media, and other advertising materials had Mills not threatened to sue for copyright infringement and proceeded with filing this action. SUF 46. It is reasonably foreseeable that Joybird would remove or replace the photographs it was accused of infringing. Costs to phase out photographs a licensee (Joybird) is accused of infringing "fall within the exact type of consequential damages California law permits." *Fungetti*, 2022 U.S. Dist. LEXIS 92724 at *23. Thus, Joybird suffered damages as a direct result of plaintiff's breach.

Therefore, Joybird's counterclaim for breach of implied license must succeed as a matter of law and summary judgment in favor of Joybird for Counterclaim IV should be granted.

**C.    Summary Judgement in Defendant's Favor Dismissing Plaintiff's Copyright Infringement Counts I and II against Defendant's Use and Distribution of the Photographs Is Appropriate Because the Defendant Is a Co-Owner of the Photographs.**

Counts I and II of the Complaint (ECF No. 1) allege that Joybird infringed on Plaintiff's copyrights by using and distributing the Photographs after its license was purportedly revoked. Summary judgment in favor of Joybird on Plaintiff's copyright infringement claims is appropriate because, based on undisputed facts, Joybird is at least a co-owner of the Photographs.

A copyright vests equally in its author or authors, making two or more authors co-owners of the copyright. *Brod v. Gen. Publ'g Group, Inc*., 32 Fed. Appx. 231, (9th Cir. 2001); 17 U.S.C. §§ 101, 201(a). A co-owner cannot be sued for copyright infringement. *Id*. (citing *Oddo v. Ries*, 743 F. 2d 630, 632–33 (9th Cir. 1984)). To establish co-ownership

---

[4] Joybird is still collecting its damages resulting from the breach including the reasonably foreseeable attorneys' fees and costs incurred to defend itself against this action.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

of the copyright, the co-author/owner must show that they (1) made an independently copyrightable contribution to the work; and (2) qualified as an "author" of the joint work. *Id*. (citing *Aalmuhammed v. Lee*, 202 F. 3d 1227, 1231-32 (9th Cir. 2000)). Under the work made for hire doctrine, ownership in copyright is automatically assigned to the employer when the work is created within the scope of employment. 17 U.S.C. § 201(b).

### 1. Employees of Joybird Made Copyrightable Contributions to the Photographs

In the context of photography, it has long been established that copyrightable expression includes selecting and arranging the subject matter, deciding on the composition and camera angles of the photograph, and determining the lighting as well as when to take the photograph. *Id*. at *234 (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884); *ETS-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1076-77 (9th Cir. 2000)).

Here, there are no genuine issues of underlying fact surrounding authorship and ownership of the Photographs. Joybird photography projects include a range of photograph types that are designated T1, T2, T3 or T4 depending on the category of image. SUF 3. Joybird has robust procedures for creating photographs of its furniture, including specifying all or substantially all creative aspects of the photographs. Mills followed these procedures. SUF 48.

Employees of Joybird selected the subject matter of the Photographs by conceiving of the idea to photograph certain furniture products, without any input Mills. SUF 49. Employees of Joybird located, assembled, and positioned the furniture products on set for each shoot, without any input from Mills. SUF 50. For T1, T2 and T3 photography projects, photoshoots occurred at Joybird's photography studio, where employees of Joybird designed and built background sets for the Photographs. SUF 51. Alternately, photoshoots occurred offsite at locations that Joybird employees scouted, approved, and rented, without any input from Mills. SUF 52. For each photography project, employees of Joybird provided extensive creative input into the final images well before Mills was involved in the process. SUF 53.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

*i. Tier 1 Photographs*

T1 Photographs are stock product images used on Joybird's websites consisting of the subject furniture, or a portion of the subject furniture, on a white background:



SUF 54. A majority of the photographs Mills captured, and at least 2,000 (60 %) of the Photographs registered by Mills are T1 Photographs. SUF 16. These types of stock product images are granted only "thin" copyright protection for the selection and arrangement of the subject matter, camera angle, and lighting of the photograph. *Ets-Hopkin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *CraftShack, Inc. v. Critical Tel. Applications, Inc.*, 2025 U.S. Dist. LEXIS 85534, *17 (C.D. Cal. Mar. 14, 2025). Mills admits that Joybird made these creative contributions, stating that for T1 Photographs, the freelance photographer only "essentially follow[s] a specific angle and lighting requirements where consistency is paramount, but still ha[s] to be flexible and experienced enough to make targeted lighting adjustments and judgements on camera quality compromises when certain corrections are more efficiently made in post." SUF 58. Thus, there is no genuine issue of material fact that employees of Joybird contributed the <u>only</u> copyrightable features of T1 photographs, with minor, if any, modifications to protectable content by Mills.[5]

---

[5] Copyright protection extends only to the protectable elements of a work. *Fiest*, 499 U.S. at 361.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

1    Employees of Joybird developed a "T1 Photography Guideline." SUF 55. This
2    document conceived the specific shot compositions, angles, and lighting for each category
3    of furniture. Exemplary pages of the T1 Photography Guideline for sofa-type furniture are
4    provided below:

5
6
7    
8
9
10

11    SUF 55. Joybird provided the T1 Photography Guideline to Mills who executed series of
12    T1 images according to the guidelines. SUF 56.   Because all freelance photographers
13    execute photography according to the T1 Photography Guideline, it is impossible to
14    distinguish which photographer captured the image. SUF 57.
15
16
17
18    
19
20
21
22
23
24
25

26    As shown above, the only difference between the T1 Photographs captured by Mills (left,
27    Holt Sofa in Clearview Ice), by Joybird's lead photographer Michelle Metzger (right, Holt
28    Sofa in Synergy Pewter), and by a third-party photographer (above, Holt Sectional Sofa in

17

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Faithful Olive) is the subject furniture (i.e., the sofa color and configuration) which is undisputably selected by Joybird. SUF 57. Moreover, the photograph angles and lighting are identical to those conceived by Joybird employees as identified in the T1 Photography Guideline.

As the T1 Photography Guideline became more robust over time, it provided additional details such as where to place the camera, whether the camera was to be positioned horizontally or vertically, specified details including focal distance, lens type, and aperture settings, and provided specifications to crop the image. SUF 59. Thus, Joybird's creative contributions to the T1 Photographs captured by Mills are sufficiently original and expressive to constitute a copyrightable contribution, even though Mills made minor adjustments and physically triggered the shutter for these Photographs. SUF 60.

*ii. Tier 2 Photographs*

Tier 2 images are also product images that, unlike the stock T1 images, include limited staging with more comprehensive set design and additional props:



SUF 61. Joybird employees selected the subject matter of the T2 Photographs and created the composition of the photograph by directing furniture arrangement, prop selection, photograph angle, lighting, and overall aesthetic appeal of the photograph. SUF 62.

18

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Joybird employees developed a "T2 Photography Guideline" for each T2 photoshoot. These documents included, for example, 3D renderings of the set and furniture placement, camera angles and lighting specifications. SUF 63. Exemplary pages of T2 Photography Guidelines are provided below:





SUF 64.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Mills was provided a T2 Photography Guideline for each T2 project. SUF 64. Mills executed the T2 images according to the guidelines. SUF 65. Thus, Joybird's creative contributions to the T2 Photographs captured by Mills are sufficiently original and expressive to constitute a copyrightable contribution, even though Mills made minor adjustments to the furniture and props (e.g., adjusted a prop if it impeded the camera angle) and physically triggered the shutter. SUF 66.

*iii. Tier 3-4 Photographs*

T3 and T4 Photographs are elevated product images taken at the Joybird studio (T3) and offsite locations (T4). SUF 67. For each T3 and T4 Photography project, Joybird employees developed and provided a Creative Brief and/or Mood Board to Mills who executed the images according to the look and feel set by Joybird. SUF 68-69. Exemplary pages of a T3 Mood Board are shown below:



SUF 68. Though Mills had more autonomy to position the furniture and select angles and

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

lighting in T3-T4 Photographs as compared to T1 and T2 Photographs, Joybird made substantial creative contributions. SUF 71. Specifically, Joybird's creative contributions to the T3 and T4 Photographs included (i) selecting the subject furniture, props and background; (ii) locating and delivering the subject furniture; (iii) booking third party venues to host photoshoots; (iv) providing a Creative Brief and/or Mood Board to direct the lighting and overall aesthetic of the photograph; and (v) directing lighting, furniture placement, and camera placement during the photoshoot. SUF 70. As a matter of law, Joybird's creative contributions to the T3 and T4 Photographs constituted independent copyrightable expression.

Accordingly, Joybird employees made independently copyrightable creative contributions to the Photographs, and these contributions were within the scope of their work for Joybird.

### 2.    Joybird Employees Were Joint Authors of the Photographs

For a contributor to be an "author" for the purposes of joint authorship, the court must consider whether (1) the putative author controls the work and is "the inventive or master mind who creates, or gives effect to the idea"; (2) the "putative coauthors make objective manifestations of a shared intent to be coauthors"; and (3) "the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised." *Brod*, 32 Fed. Appx. At 235 (citing *Aalmuhammed*, 202 F. 3d at 1234). "Control in many cases will be the most important factor." *Id*.

There is no genuine issue of fact that Joybird controlled the entire development and creation of the joint works. Joybird employees conceived of the ideas for the Photographs, selected the subject matter, background settings and props (for T2-T4 Photographs), located and delivered subject furniture, obtained agreements and paid for use third party shooting locations, arranged the composition for each shot, and directed Mills to make changes to the camera angles and lighting. SUF 72. Employees of Joybird, inspired and directed entire productions, and at all times had final approval of the positioning of the subject matter, camera angle, lighting, editing and selection of the Photographs. SUF 73-75. Mills was a

21

collaborative team member along with lighting specialists, digital technicians and stylists hired by Joybird who executed the photographs according to the constraints and vision detailed in Joybird's Guidelines, Creative Briefs, and Mood Boards, but the true mastermind behind each shoot was the Creative Director and other Joybird employees. Under these circumstances, Joybird exercised sufficient artistic control over the photographs to qualify as a co-author as a matter of law. Further, based on Joybird's contributions, no reasonable trier of fact could find that the audience appeal of the work is due to Mills' contributions alone.

With respect to the second factor ("intent to be co-authors"), there is no issue of genuine fact that Mills manifested intent to be co-author by collaborating with employees of Joybird on the composition, angle, and lighting of the Photographs. Mills executed the product Photography according to Joybird's direction. SUF 56, 65, 69. Mills sought out and deferred to Joybird employee's judgment regarding the positioning of the subject furniture and props, camera angles, and lighting. SUF 76. No reasonable trier of fact could find that Mills did not intend to create a joint work.

The facts in this case align closely with the Ninth Circuit case *Brod v. Gen. Publ'g Group, Inc*. In *Brod*, the defendant hired the plaintiff to photograph a television to use in the defendant's book. *Brod*, 32 Fed. Appx. at 233. The Court found that the defendant made independent copyrightable contributions to the photographs "even though he did not physically trigger the shutter," where the defendant conceived of the idea and selected the subject matter of the photographs, located the subject matter for the photoshoot, collaborated with the photographer during the photography session. *Id*. at 234. Defendant exercised control because he "inspired the idea, located and obtained permission to use the [subject matter], contacted [plaintiff] to collaborate on the project, arranged the composition for each shot, directed [plaintiff] to make changes to the camera angles," and "gave final approval of both the positioning of the subject matter and the camera angle." *Id*. Plaintiff manifested intent to be co-author "by collaborating with [defendant]" and "deferring to [defendant's] judgment regarding the positioning of the [subject matter]…and camera

22

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

angles." *Id*. Here, like in *Brod*, no reasonable trier of fact could find that employees of Joybird were not co-authors of the photographs.

Joybird employees are co-authors of the Photographs as a matter of law. Joybird cannot be liable for infringement as a co-owner of the copyright. Therefore, Plaintiff's claim for copyright infringement must fail and summary judgment should be granted to dismiss Counts I and II.

### D. Summary Judgment Precluding Mills' Claim for Statutory Damages and Attorneys' Fees is Appropriate

As relief to its copyright infringement claims (Counts I and II), Mills requests an award of "actual damages, or if applicable and so-elected, statutory damages." Statutory damages are not available to Mills because there is no genuine issue of fact that the Photographs were published and used by Joybird over three months before Mills' copyright registration date.

Under 17 U.S.C. § 504 (a) and (c), a copyright owner may elect to recover statutory damages instead of actual damages and additional profits. However, 17 U.S.C. § 412 states that "no award of statutory damages or attorneys' fees…shall be made for…(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the publication of the work." The purpose of statutory damages under § 412 is to provide copyright owners an incentive to promptly register their copyrights. Allowing statutory damages "where an infringing act occurs before registration and then reoccurs thereafter clearly would defeat the dual incentives of § 412." *Derek Andrew, Inc. v. Proof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008).

Each Photograph is considered <u>one work</u> for purposes of § 504(c)(1) ("an award of statutory damages for all infringement involved in the action, with respect to any <u>one work</u>…"). *See, e.g.*, *Derek Andrew*, 528 F.3d at 701. Mills registered the copyrights in the Photographs on January 22, 2024. SUF 7. It is undisputed that Joybird published the Photographs in dispute before July 9, 2023, when Mills attempted to "revoke" his

23

permission to use the Photographs. SUF 44. Because July 9, 2023 is more than six months before January 22, 2024, Joybird necessarily published the Photographs before the statutory grace period applicable to statutory damages and attorneys' fees. Therefore, statutory damages and attorneys' fees are not recoverable under §412(2) and Plaintiff's damages should be limited to its actual damages and disgorgement

of profits attributable to the infringement.

## IV.    CONCLUSION

For the reasons explained above, the Court should enter summary judgment under Fed. R. Civ. P. 56 in Defendant's favor and dismiss Count I (direct copyright infringement by Joybird), Count II (contributory copyright infringement by Joybird) and grant Defendant's Counterclaim IV (breach of implied license by Plaintiff). Should the Court not find summary judgment appropriate to dismiss Count I and II, Plaintiff's claim for damages should be limited to actual damages.


Date: July 14, 2025                      Respectfully Submitted By:

                                        /s/ Glenn E. Forbis
                                        Glenn E. Forbis (admitted Pro Hac Vice)
                                        J. Bradley Luchsinger (admitted Pro Hac Vice)
                                        Colette E. Verch (admitted Pro Hac Vice)
                                        Harness, Dickey & Pierce PLC
                                        5445 Corporate Drive, Suite 200
                                        Troy, MI  48098
                                        248-641-1600
                                        Email: gforbis@harnessip.com
                                        bluchsinger@harnessip.com
                                        cverch@harnessip.com

                                        *Of Counsel for Defendant*
                                        *STITCH INDUSTRIES, INC., d/b/a*
                                        *JOYBIRD, a Delaware Corporation*

                                        Edward W. Lukas, Jr.
                                        Harrington, Foxx, Dubrow & Canter, LLP
                                        535 N. Brand Boulevard, Suite 800

Glendale, CA 91203
(213) 489-3222 x227 (phone)
(424) 354-1853 (Direct Line)
(213) 622-4321 (fax)
Email: elukas@hfdclaw.com

*Local Counsel for Defendant*
*STITCH INDUSTRIES, INC., d/b/a*
*JOYBIRD, a Delaware Corporation*

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will be served by operation of the Court's electronic filing system upon all counsel of record and ECF participants.

Dated: July 14, 2025          /s/ Glenn E. Forbis
                              Glenn E. Forbis (admitted Pro Hac Vice)

                              *Of Counsel for Defendant*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant, certifies that this brief contains 6,983 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 14, 2025          /s/ Glenn E. Forbis
                              Glenn E. Forbis (admitted Pro Hac Vice)

                              *Of Counsel for Defendant*

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## CERTIFICATE OF CONFERENCE

The undersigned, counsel of record for Defendant, certifies that the Parties satisfied the meet and confer requirements of L.R. 7-3. The Parties met and conferred on June 20, 2025, conferred via email on July 2 and July 7, and met again on July 10. During the meet and confers, the parties' substantive positions were discussed. Defendant provided case law in support of its implied license and authorship positions. Plaintiff identified documents it relies on to support its conditional license theory.

Dated: July 14, 2025                    /s/ Glenn E. Forbis
                                        Glenn E. Forbis (admitted Pro Hac Vice)

                                        *Of Counsel for Defendant*

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**